AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT
for the
Western District of Washington

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
Information Associated with Email Accounts that are Stored at the Premises Controlled by Google, Inc. and Microsoft Corporation

Case No. MJ20-5058

FILED ___ LODGED ___
___ RECEIVED
MAR 17 2020
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the  Northern and Western  District of  California and Washington , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, attached hereto and incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2241(c) | Aggravated Sexual Abuse of a Child under 12 |
| 18 U.S.C. § 2244(a)(5) | Abusive Sexual Contact of a Child under 12 |
| 18 U.S.C. § 2243(a)(1) | Sexual Abuse of a Minor |

The application is based on these facts:
✓ See Affidavit of Special Agent Kyle McNeal, FBI, attached hereto and incorporated by reference herein.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

*Applicant's signature*
KYLE MCNEAL, Special Agent
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:  03/17/2020

*Judge's signature*

City and state:  Tacoma, Washington     THERESA L. FRICKE, United States Magistrate Judge
*Printed name and title*

USAO: 2019R00368

# ATTACHMENT A
## Place to Be Searched

The electronically stored data, information and communications contained in, related to, and associated with, including location history data, sourced from methods including GPS, Wi-Fi, and Bluetooth, and all preserved data associated with:

1. Tarrus1977@gmail.com (Google); and
2. Tarrus1977@hotmail.com (Microsoft)

as well as all location history data and other subscriber and log records associated with the SUBJECT ACCOUNTS, to include the IIS (Internet Information Services) logs associated with any associated Google Drive accounts, which are located at premises owned, maintained, controlled or operated by Google, Inc., an email provider headquartered at 1600 Amphitheatre Parkway, Mountain View, California or at Microsoft, Inc., an Internet Services Provider headquartered at One Microsoft Way, Redmond, Washington 98052.

ATTACHMENT A/AFFIDAVIT OF SPECIAL
AGENT KYLE MCNEAL - 1
USAO NO. 2019R00368

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3806

## ATTACHMENT B
## ITEMS TO BE SEIZED

I. **Items to be to be Provided for Search**

All electronically stored information and communications contained in, related to, and associated with, including all preserved data associated with, the following SUBJECT ACCOUNTS:

    1.    **Tarrus1977@gmail.com (Google); and**

    2.    **Tarrus1977@hotmail.com (Microsoft)**

including any and all information related to preservation record numbers 2501185 and 3525463 (Google Inc.) and GCC-1386634-F4D6S3 (Microsoft Inc.) as well as all subscriber records associated with the SUBJECT ACCOUNTS, including (1) name; (2) address; (3) records of session times; (4) length of service (including start date) and types of services utilized; (5) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address such as internet protocol address; (6) account log files (login IP address, account activation IP address, and IP address history); (7) detailed billing records/logs; (8) means and source of payment; (9) lists of all related accounts; (10) all email content; (11) all other account information; (12) all other profile information; (13) all contact lists; (14) all calendar content; and (15) any and all records of communications between Google, Microsoft and any other person about issues relating to the SUBJECT ACCOUNT, such as technical problems, billing inquiries, or complaints from other users about the specified account. This is to include records of contacts between the subscribers and the providers' support services, as well as records of any actions taken by the provider or subscriber as a result of the communications. All electronically stored information location history data, sourced from methods including GPS, Wi-Fi and Bluetooth. All items shall be provided in Universal Time Coordinated (UTC) and disclosed to the government within fourteen (14) days of service of this warrant.

ATTACHMENT B/ AFFIDAVIT OF SPECIAL
AGENT KYLE MCNEAL - 1
USAO NO. 2019R00368

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3806

Case 9:20-mj-05058-TLF-SEALED Document 1 Filed 03/17/20 Page 4 of 24

## II. Items to be Seized

From all electronically stored information and communications contained in, related to, and associated with, including all preserved data associated with, the SUBJECT EMAIL ACCOUNTS listed in Attachment A, all information described below that constitutes fruits, evidence, and instrumentalities of the crimes of 18 U.S.C. §§ 2241(c)(Aggravated Sexual Abuse of a Child under 12), 2244(a)(5)(Abusive Sexual Contact of a Child under 12), 2243(a)(1)(Sexual Abuse of a Minor), 3261 (Military Extraterritorial Jurisdiction Act--"MEJA") and 3238 (MEJA Venue), including any and all of the following records:

(a) Message header data required to trace any user associated with the account and its access;

(b) Subscriber details provided by the user when creating the account;

(c) IP log-on data for access to the accounts;

(d) Subscriber information, including names, addresses, dates of birth, contact details and any other personal information supplied by the subscriber such as the means and source of payment for any service;

(e) User connection information, including session times and durations and IP addresses assigned during the relevant period;

(f) All contact lists, address lists, buddy lists or other such data associated with the account;

(h) All opened or unopened communications in the SUBJECT ACCOUNTS between April 5, 2019 through March 10, 2020;

(i) All photographs and images found in the account, including IP data and any other traceable details of any users who have accessed or downloaded the photographs and images; and

(j) All location history data, sourced from methods including GPS, Wi-Fi, and Bluetooth between April 5, 2019 through March 10, 2020.

ATTACHMENT B/ AFFIDAVIT OF SPECIAL
AGENT KYLE MCNEAL - 2
USAO NO. 2019R00368

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3806

# AFFIDAVIT OF KYLE MCNEAL

STATE OF WASHINGTON )
 ) ss
COUNTY OF PIERCE )

I, Kyle McNeal, having been duly sworn, state as follows:

## I. INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), assigned to the Special Agent in Charge in Seattle, Washington. I have been an Agent with the FBI since April 2011. My training at the FBI Academy in Quantico, Virginia, included courses in law enforcement techniques, federal criminal statutes, conducting complex criminal investigations, physical and electronic surveillance techniques, and the execution of search warrants. During my employment as a law enforcement officer, I have attended periodic seminars, meetings, and continued training.

2. As part of my duties as an FBI Special Agent, I investigate criminal violations relating to child exploitation and child pornography. I have received training in the area of child pornography and child exploitation. I have also participated in the execution of numerous search warrants involving investigations of child exploitation and/or child pornography offenses.

3. I work with other federal, state, and local law enforcement personnel in the investigation and prosecution of crimes involving the sexual exploitation of children. I make this Affidavit in support of an application for search warrants for information associated with certain accounts that are stored at premises owned, maintained, controlled, or operated by: (1) Google Inc., an Internet Service Provider headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043, and (2) Microsoft, Inc., an Internet Services Provider headquartered at One Microsoft Way, Redmond, Washington 98052, pursuant to 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google and Microsoft to disclose to the government records and other

AFFIDAVIT OF SPECIAL AGENT
KYLE MCNEAL - 1
USAO NO. 2019R00368

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3806

information in their possession pertaining to the subscriber or customer associated with the following accounts (SUBJECT EMAIL ACCOUNTS), as more fully described in Attachment A of this affidavit, including the contents of communications contained therein:

  A. Tarrus1977@gmail.com (Google)(SUBJECT GOOGLE ACCOUNT); and

  B. Tarrus1977@hotmail.com (Microsoft)(SUBJECT MICROSOFT ACCOUNT).

4. This also includes any and all information related to preservation record numbers 2501185 and 3525463 (Google Inc.) and GCC-1386634-F4D6S3 (Microsoft Inc.) as well as all other subscriber and log records associated with the account. I make this request to search the above accounts for evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 2241(c)(Aggravated Sexual Abuse of a Child under 12), 2244(a)(5)(Abusive Sexual Contact of a Child under 12), 2243(a)(1)(Sexual Abuse of a Minor), 3261 (Military Extraterritorial Jurisdiction Act--"MEJA") and 3238 (MEJA Venue). This is a court of competent jurisdiction pursuant to 18 U.S.C. §2703(d).

5. The facts set forth in this Affidavit are based on the following: my personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews of witnesses; my review of records related to this investigation; communications with others who have knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the application for these search warrants, it does not set forth each and every fact that I or others have learned during the course of this investigation. I have set forth only the facts that I believe are relevant to the determination of probable cause to believe that evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 2241(c)(Aggravated Sexual Abuse of a Child under 12), 2244(a)(5)(Abusive Sexual Contact of a Child under 12), 2243(a)(1)(Sexual Abuse of a

AFFIDAVIT OF SPECIAL AGENT
KYLE MCNEAL - 2
USAO NO. 2019R00368

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3806

1 | Minor), 3261 (Military Extraterritorial Jurisdiction Act--"MEJA") and 3238 (MEJA
2 | Venue) will be found in the SUBJECT EMAIL ACCOUNTS.

## II. JURISDICTION

6. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. §§ 2711(3)(A)(i); 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense[s] being investigated." 18 U.S.C. § 2711(3)(A)(i). Federal investigative and charging venue under MEJA lies in 18 U.S.C. § 3238. Where an offender has not been arrested or "brought into any district, an indictment or information may be filed in the district of the last known residence of the offender." *Id.* During an interview with agents, Nancy Elliott recalled that the last residential address for ELLIOTT and the family in the United States before moving to Japan was 2211 156th St. Ct. E., Tacoma, Washington 98445. This location is located with the Western District of Washington.

## III. SUMMARY OF INVESTIGATION

7. On or On April 5, 2019, the FBI Tacoma Resident Agency was notified from the United States Army Criminal Investigation Division Command (CID) Camp Zama, Japan regarding the sexual abuse of a minor. MV1 is currently a 13 year-old girl born on September 12, 2006.

8. Camp Zama CID was notified by faculty at John O. Arnn Elementary School, Camp Zama, Japan, that MV1 may have been sexually abused by her father. MV1's teacher, Ms. Lopes, became aware of the incident when associates of MV1 informed her of the allegations. Ms. Lopes then reported the information to the school's administration who then passed it on to Camp Zama CID.

9. During the investigation, FBI Special Agent Kyle McNeal interviewed Robin Lopes at John O. Arnn Elementary School, Camp Zama, Japan. In the interview. Ms. Lopes provided a poem to SA Kyle McNeal entitled "The Surprise" that MV1 had written:

AFFIDAVIT OF SPECIAL AGENT
KYLE MCNEAL - 3
USAO NO. 2019R00368

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3806

> A door opens to a child room, When [sic] it's very dark, a father comes in and wakes the child and takes them downstairs, the whole house is sleeping and so are the family members, the father and the child watch TV until it gets a little late, the father had a surprise for the child and it really did suprise [sic] them, and so then and nothing more the suprise [sic] soon began.

10. On April 3, 2019, CID Special Agents interviewed MV1 who confirmed ELLIOTT sexually assaulted her on several occasions. The first instance was approximately a year ago, the last was about two days prior to the interview. MV1 disclosed that ELLIOTT would make her perform oral sex upon him and make her touch his genitals. ELLIOTT digitally penetrated MV1 and performed oral sex upon her. Based on the context of the conversation, it is believed that ELLIOTT attempted to penetrate MV1's vagina with his penis. MV1 described this as being painful. According to MV1, these incidents occurred in her home after Mrs. Elliott went to sleep. Additionally, MV1 described being sexually abused at the "Golf Hotel." In a later contact, MV1 positively identified images of the Hotel Golf located in Yamato City, Kanagawa. MV1 further recalled that ELLIOTT abused her, on at least one occasion, while using a device that resembled an electric toothbrush. MV1 was unable to further describe the toothbrush-like object but stated that it was pink in color. ELLIOTT disclosed to MV1 that he had been sexually abused as a child and that he had a sickness. ELLIOTT told her if he did it again, she should tell her mother, Mrs. Elliott.

11. On April 3, 2019, CID interviewed Mrs. Elliott, who provided a video-recorded statement wherein she stated she had no prior knowledge of any sexual actions between ELLIOTT and her daughter, MV1. Mrs. Elliott stated ELLIOTT told her he was sexually assaulted by family members as a child, although she did not know any additional details. Mrs. Elliott acknowledged that they did have vibrators in the home, but she had no knowledge of MV1 ever using one.

AFFIDAVIT OF SPECIAL AGENT
KYLE MCNEAL - 4
USAO NO. 2019R00368

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3806

12. On April 3, 2019, CID interviewed ELLIOTT, who provided a video-recorded sworn statement wherein he denied MV1's allegations in their entirety. ELLIOTT did acknowledge that he frequently hugged MV1 and may have, on occasion and unintentionally, grazed her breasts.

13. ELLIOTT admitted he was molested as a boy by young adult males. He stated he used sexual toys, including vibrators, with Mrs. Elliott, but never with MV1. He stated the type of vibrators they have would be too much for a little girl. ELLIOTT did acknowledge that he cleaned MV1 while Mrs. Elliott was present on one occasion approximately four years earlier because she was stinky. ELLIOTT stated he spanked MV1 a week or so ago for lying about a song and a Kindle that she was not supposed to have. ELLIOTT stated that pornography periodically appeared on the television while they were watching television or anime, but he quickly turned it off. ELLIOTT claimed that he carefully monitored the children's television usage.

14. On April 3, 2019, CID collected a sheet and a rug from MV1's room as well as a pink vibrator from Mrs. Elliott's room. While Mrs. Elliott and MV1 showed CID around the house, and when one agent briefly explained DNA to MV1, she spontaneously uttered that CID should collect the rug from the floor in her room.

15. On April 3, 2019, Sarah K. Abner conducted a Sexual Assault Forensic Examination. During the exam, MV1 told Abner that "it's happened a lot of places… my room, the last time, sometimes downstairs, my dad's room or hotels… twice in hotels." MV1 further stated, "I don't know if I hurt my dad, but I did try to push him away." When asked if there was anything else about the incident, MV1 remembered "well I spit some stuff on the floor…it wasn't a lot like the time he had stuff come out all over my leg…that was a long time ago though."

16. Nurse Abner's examination revealed a mucous type fluid in MV1's vaginal area. Nurse Abner also observed redness with tenderness to the labia minora, posterior fourchette and hymen. These findings are consistent with the ELLIOTT's attempts to vaginally penetrate MV1. MV1 was tested at the Camp Zama Medical Clinic for Sexually

AFFIDAVIT OF SPECIAL AGENT
KYLE MCNEAL - 5
USAO NO. 2019R00368

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3806

1  Transmitted Diseases (STD's) which came back positive for Chlamydia. MV1 denied
2  having sexual contact with anyone other than ELLIOTT.
3      17.    On or about February 21, 2020, Mrs. Elliott underwent a Chlamydia
4  trachomatis IgG test. The IgG antibody detection is a marker for a Chlamydia positive
5  immune response, either for current, chronic, or past infections. Based on the results of
6  the test, it suggests that Mrs. Elliott contracted Chlamydia at some point.
7      18.    The FBI Laboratory tested the SANE kit and detected ELLIOTT's DNA on
8  the following swabs: (1) anal/perineal; (2) left breast swab; and (3) right breast swab.
9      19.    On or about April 13, 2019, ELLIOTT departed Japan through the Narita
10 airport in a failed attempt to visit the Philippines. US Officials successfully convinced
11 Philippine authorities to deny ELLIOTT access to the country after which he returned to
12 Japan.
13     20.    On April 18, 2019, and contrary to the explicit recommendation of the U.S.
14 Attorney's Office, the Army obtained a Commander's Authorization to collect a Sexually
15 Transmitted Disease Test and Buccal Swab from the Defendant. Later that day, CID
16 agents escorted the Defendant to a Camp Zama health clinic. Once notified of the search
17 authorization, ELLIOTT refused to comply and departed the installation.
18     21.    On or about April 19, 2019, ELLIOTT was scheduled to depart Japan for
19 Hawaii. The Hawaiian USAO was prepared to interdict ELLIOTT upon his arrival and
20 execute a search warrant for his digital devices. Instead, ELLIOTT sent a message to
21 Nancy Elliott claiming that an accident on the train had forced him to miss his flight.
22 ELLIOTT apologized and told Nancy Elliott that he would attempt to get on the flight the
23 following day. Instead of traveling to Hawaii as planned, financial records indicated that
24 ELLIOTT purchased a flight on Air Asia (KH) for $251.66 in addition to a $3.00 Inflight
25 Internet Service fee. ELLIOTT told Nancy Elliott that he was in Korea, but (KH) is the
26 abbreviation for Cambodia.
27     22.    ELLIOTT's current whereabouts are unknown although he has had email
28 communications with Nancy Elliott. Nancy Elliott provided consent for SA McNeal to

AFFIDAVIT OF SPECIAL AGENT
KYLE MCNEAL - 6
USAO NO. 2019R00368

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3806

monitor her email communications with ELLIOTT. The following communications took place between ELLIOTT and Nancy Elliott.

### Email from TARRUS1977@GMAIL.COM

**TEE Elliott** <tarrus1977@gmail.com>
to me
Aug 19, 2019, 1:02 PM

I'm ok but I miss you and the kids so much. I can't take back the mistakes I've made but I want you to know I'm sorry. I've found a church to worship and a good pastor. I'm so sorry for everything I've put the family through. As for where I am, I'm in a safe place but I've put myself in exile but I'm safe. I've found a small place but I don't make much money but I have a roof over my head and I pray for you and the kids often.

I've reflected on my mistakes with you, our kids and the family. God will continue to work on me and give comfort to you, Nina, and James. Please let them know I love them so much and I'm sorry I've put them through this too. I wasn't a good father and husband so God has taken you all from me but I pray that His will is for me to remain close to Him. I wish I could be with you but I know it's not possible anymore.

I'm sorry I didn't see the blessing I had in my life. They say you never miss your water until your well runs dry. It's so true. I love you, I love the kids and thank you for caring

---

(no subject) Inbox x

**TEE Elliott** <tarrus1977@gmail.com>
to me
Fri, Sep 6, 11:51 AM

Please tell James Happy Birthday and I'm sorry I can't be with him for his 19th. I'm sorry to you and Nina too. I know you said that it was unforgivable but I hope you can someday.

Reply    Forward

---

### Email from TARRUS1977@HOTMAIL.COM

---------- Forwarded message ----------
From: Tee <tarrus1977@hotmail.com>
Date: Wed, Nov 27, 2019 at 09:52
Subject: I'm sorry
To: Nancy Elliott <nancyjoan2014@gmail.com>

To whom it may concern, this will be my final to you. Everything I've done I'm sorry. I will take my life tonight and I know it will disappoint some of you and others will feel relieved. Goodbye

23. On November 27, 2019, SA McNeal received the email noted above from Nancy Elliott. Emergency Disclosure requests were sent to Google for records pertaining to the whereabouts of ELLIOTT. Based on the IP address provided by Google on or about November 27, 2019, it appeared that ELLIOTT was in the Philippines.

AFFIDAVIT OF SPECIAL AGENT
KYLE MCNEAL - 7
USAO NO. 2019R00368

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3806

24. Nancy Elliott has confirmed that both Tarrus1977@gmail.com and Tarrus 1977@hotmail.com belong to ELLIOTT. Both prior to and since the allegations as demonstrated by the identified messages, Nancy Elliott has received numerous messages from the SUBJECT ACCOUNTS that she believes to have come from ELLIOTT.

25. At all relevant times, Nancy Elliott was a Department of Defense civilian employee residing overseas. As such, ELLIOTT was a dependent of Nancy Elliott and accompanying the Armed Forces overseas. ELLIOTT's alleged offenses against MV1 are subject to prosecution in federal district court for crimes committed outside the United States as if the offenses were committed within the special maritime and territorial jurisdiction of the United States. *See* MEJA, 18 U.S.C. §§ 3261-3267.

## IV. SUBJECT'S USE OF ELECTRONIC COMMUNICATION SERVICES

26. In my training and experience, and based upon the training and experience of other FBI special agents with whom I have consulted, I have learned that Google and Microsoft ("Providers") make a variety of online services available, including electronic mail ("email") access, to the general public. These Providers manage email accounts at the domain names "gmail.com" and "Hotmail.com" like the SUBJECT EMAIL ACCOUNTS. Subscribers obtain an account by registering with the Providers. During the registration process, the Providers asked subscribers to provide basic personal information. Therefore, the Providers' computers are likely to contain stored electronic communications (including retrieved and unretrieved email for the Providers' subscribers) and information concerning subscribers and their use of the Providers' services, such as account access information, email transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

27. In general, an email message that is sent to the Providers' subscriber is stored in the subscriber's "mail box" on the Providers' servers until the subscriber deletes the message. If the subscriber does not delete the message, the message can remain on

AFFIDAVIT OF SPECIAL AGENT
KYLE MCNEAL - 8
USAO NO. 2019R00368

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3806

the Providers' servers indefinitely. Even if the subscriber deletes the message, it may continue to be available on the Providers' servers for a certain period of time.

28. When the subscriber sends an email message, it is initiated at the user's computer, transferred via the Internet to the Providers' servers, and then transmitted to its end destination. The Providers often save a copy of the email message sent. Unless the sender of the message specifically deletes the message from the Providers' server, the message can remain on the system indefinitely. Even if the sender deletes the email message, it may continue to be available on the Providers' servers for a certain period of time.

29. A sent or received email message typically includes the content of the message, source and destination addresses, the date and time at which the message was sent, and the size and length of the email message. If an email user writes a draft message but does not send it, that message may also be saved by the Providers but may not include all of these categories of data.

30. A Providers' subscriber can also store files, including email messages, address books, contact or buddy lists, calendar data, photographs, and other files, on servers maintained and/or owned by the Providers. In my training and experience, evidence of who was using an email account may be found in address books, contact or buddy lists, email messages in the account, attachments to email messages, including photographs and files, and photographs and files stored in relation to the account.

31. Subscribers to the Providers might not store on their home computers or other digital devices copies of the email messages stored in their Providers account. This is particularly true when they access their Providers' account through via the internet, or if they do not wish to maintain particular email messages or files in their residence.

32. In general, the Providers ask each of their subscribers to supply certain personal identifying information when registering for an email account. This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of

AFFIDAVIT OF SPECIAL AGENT
KYLE MCNEAL - 9
USAO NO. 2019R00368

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3806

payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

33. These email Providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the Providers' website), and other log files that reflect usage of the account. In addition, these email Providers often have records of the IP address used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the SUBJECT EMAIL ACCOUNTS.

34. In some cases, email account users will communicate directly with the Providers about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. The Providers typically retain records about such communications, including records of contacts between the user and the Providers' support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

35. I know that Google offers approximately 15 GB of free storage space per email address. This allows users to store a large amount of emails and other related content. Google Drive (formerly known as Google Docs) is a free online "cloud" storage that allows users to share files from any device. With Google Drive, a user can share files in lieu of sending email attachments. Picasa is a photo-sharing website owned by Google that allows users to post and share images with other individuals. Google also

AFFIDAVIT OF SPECIAL AGENT
KYLE MCNEAL - 10
USAO NO. 2019R00368

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3806

offers other distinct services, including video chat and Google+ Photos. All of these services are very useful tools that the user of the Google account could be using to store and share images of child pornography. Google also allows its users, through its mobile services, to access their email account(s), stored images, and other content at any time from any computer with Internet access.

36. I know that Microsoft manages hotmail accounts. I know that Microsoft offers new users approximately 15 GB of free storage space per email address. This allows users to store a large amount of emails and other related content. Microsoft allows its users, through its mobile services, to access their accounts from any device with Internet access.

## V. PAST EFFORTS TO OBTAIN EVIDENCE

37. I understand that the contents of the SUBJECT EMAIL ACCOUNTS can only be obtained in the Ninth Circuit, by means of a search warrant issued under authority of 18 U.S.C. § 2703(a), 2703(b)(1)(A), 2703(c)(1)(A), and Federal Rule of Criminal Procedure 41(e)(2)(b).

38. To my knowledge, there have been no other prior attempts to secure a search warrant to search and seize these records. In May 2019 and February 2020, preservation letters were sent to Google and Microsoft respectively requesting that the contents of the SUBJECT EMAIL ACCOUNTS be preserved, pursuant to 18 U.S.C. § 2703(f)(1), for a period of 90 days.

## VI. GENUINE RISKS OF DESTRUCTION OF EVIDENCE

39. Based on my experience and training, it is not uncommon for technically sophisticated criminals to use encryption or programs to destroy data that can be triggered remotely or by a pre-programed event to keystroke, or other sophisticated techniques to hide data. In this case, the data sought is stored on a server belonging to the Providers. If that data is accessed and deleted by the user, by either deleting the emails or any associated contact lists, the content would not be retrievable. Unlike traditional computer forensics where a hard drive can be searched and deleted documents recovered,

AFFIDAVIT OF SPECIAL AGENT
KYLE MCNEAL - 11
USAO NO. 2019R00368

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3806

information stored in an enterprise storage system is irretrievable once it has been deleted.

### VII. PROTOCOL FOR SORTING SEIZABLE ELECTRONICALLY STORED INFORMATION

40. In order to ensure that agents are limited in their search only to the contents of the SUBJECT EMAIL ACCOUNTS and any attachments, stored instant messages, stored voice messages, documents, and photographs associated therewith; in order to protect the privacy interests of other third parties who have accounts with the Providers; and in order to minimize disruptions to normal business operations of Google; this application seeks authorization to permit agents and employees of Google to assist in the execution of the warrant, pursuant to 18 U.S.C. § 2703(g), as follows:

    a. The search warrants will be presented to Google and Microsoft with direction that it identify and isolate the SUBJECT EMAIL ACCOUNTS and associated records described in Section I of Attachment B.

    b. Google and Microsoft will also be directed to create an exact duplicate in electronic form of the SUBJECT EMAIL ACCOUNTS and associated records specified in Section I of Attachment B, including an exact duplicate of the content of all email messages stored in the SUBJECT EMAIL ACCOUNTS.

    c. Google and Microsoft shall then provide an exact digital copy of the contents of the SUBJECT EMAIL ACCOUNTS, as well as all other records associated with the account, to me, or to any other agent of the FBI. Once the digital copies have been received from Google and Microsoft, the copies will, in turn, be forensically imaged and only those images will be reviewed and analyzed to identify communications and other data subject to seizure pursuant to Section II of Attachment B. The original digital copies will be sealed and maintained to establish authenticity, if necessary.

    d. I, and or other agents of the FBI, will thereafter review the forensic images, and identify from among that content those items that come within the items identified in Section II to Attachment B, for seizure. I, and/or other agents of the FBI,

AFFIDAVIT OF SPECIAL AGENT
KYLE MCNEAL - 12
USAO NO. 2019R00368

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3806

will then copy those items identified for seizure to separate media for future use in investigation and prosecution. The forensic copies of the complete content of the SUBJECT EMAIL ACCOUNTS will also then be sealed and retained by the FBI, and will not be unsealed absent Court authorization, except for the purpose of duplication of the entire image in order to provide it, as discovery, to a charged defendant.

41. Analyzing the data contained in the forensic image may require special technical skills, equipment, and software. It could also be very time-consuming. Searching by keywords, for example, can yield thousands of "hits," each of which must then be reviewed in context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant "hit" does not end the review process. Keywords used originally need to be modified continuously, based on interim results. Certain file formats, moreover, do not lend themselves to keyword searches, as keywords search text, and many common electronic mail, database, and spreadsheet applications (which may be attached to email) do not store data as searchable text. The data is saved, instead, in proprietary non-text format. And, as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases as well. Consistent with the foregoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months.

42. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, it is necessary to seize all emails, chat logs and documents, that identify any users of the SUBJECT EMAIL ACCOUNTS and any emails sent or received in temporal proximity to incriminating emails that provide context to the incriminating communications.

43. All forensic analysis of the image data will employ only those search protocols and methodologies reasonably designed to identify and seize the items identified in Section II of Attachment B to the warrant.

AFFIDAVIT OF SPECIAL AGENT
KYLE MCNEAL - 13
USAO NO. 2019R00368

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3806

## VIII. FACTUAL BASIS FOR SEALING AND NON-DISCLOSURE

44. ELLIOTT's current whereabouts are unknown and poses a threat to the community. Premature notification of this investigation could cause flight from prosecution, risk destruction of or tampering of evidence or otherwise seriously jeopardize this investigation. *See* 18 U.S.C. § 2705(b). Some of the evidence in this investigation is stored electronically. If alerted to the existence of the warrant, the subjects under investigation could destroy that evidence, including information saved to their personal computers. In this case, the requested non-disclosure and sealing orders would be appropriate because the search warrant relates to an ongoing criminal investigation that is neither public nor known to ELLIOTT, and its disclosure may alert ELLIOTT to the ongoing investigation.

## IX. CONCLUSION

45. Based upon the evidence gathered in this investigation as set out above, including but not limited to my review of data and records, information received from other law enforcement agents, and my training and experience, there is probable cause to believe that evidence, fruits and/or instrumentalities of the crimes of 18 U.S.C. §§ 2241(c)(Aggravated Sexual Abuse of a Child under 12), 2244(a)(5)(Abusive Sexual Contact of a Child under 12), 2243(a)(1)(Sexual Abuse of a Minor), 3261 (Military Extraterritorial Jurisdiction Act--"MEJA") and 3238 (MEJA Venue) exist and will be found in the electronically stored information or communications contained and associated with the SUBJECT EMAIL ACCOUNTS, and any attachments, stored instant messages, stored voice messages, documents, and photographs associated therewith, as well as in subscriber and log records associated with the account. Accordingly, by this Affidavit and warrant I seek authority for the government to search all of the items specified in Attachment A and Section I of Attachment B (both of which are attached

//
//
//

AFFIDAVIT OF SPECIAL AGENT
KYLE MCNEAL - 14
USAO NO. 2019R00368

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3806

hereto and incorporated by reference herein) to the warrants, and specifically to seize all of the data, documents and records that are identified in Section II of Attachment B.

_____
KYLE MCNEAL, Affiant
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to me by telephone on March 17, 2020.

_Theresa L. Fricke_
THERESA L. FRICKE
United States Magistrate Judge

AFFIDAVIT OF SPECIAL AGENT
KYLE MCNEAL - 15
USAO NO. 2019R00368

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3806